IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN WALKER, | ) | Case No. 5:17cv2361 |
| | ) | |
| Petitioner, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| TOM SCHWEITZER, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

## I.    Introduction

Steven Walker, an Ohio prison inmate serving a life sentence for murder, has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, contending that the state court violated his constitutional rights by denying him leave to file a motion for new trial based on his presentation of newly discovered evidence.  ECF Doc. 1.  Respondent, Tom Schweitzer, warden of the Lebanon Correctional Institution in Lebanon, Ohio has opposed the petition in his return of writ.  ECF Doc. 7.  Walker has filed a traverse in support.  ECF Doc. 13.  Because Walker's sole claim was procedurally defaulted and raises only issues that are noncognizable in a federal habeas case and would otherwise fail on the merits, I recommend that the court DISMISS the claim and DENY Walker's petition for writ of habeas corpus.

II.     **State Court Case History**

A.     **Trial Court and Direct Appeal Proceedings**

On August 30, 2005 a Stark County, Ohio grand jury returned an indictment charging Walker with two counts.  Count One charged Walker with the murder of Michael Cheek, in violation of Ohio Rev. Code §2903.02(A).  The grand jury attached a three-year firearm specification to Count One under Ohio Rev. Code § 2941.145.  Count Two charged Walker with carrying a concealed weapon in violation of Ohio Rev. Code § 2934.12(A)(2).  ECF Doc. 7-1 at 4.  Walker pleaded not guilty and the matter proceeded to jury trial on October 24, 2005.  ECF Doc. 7-1 at 7.  On October 25, 2005 the jury returned verdicts finding Walker guilty of both charges and the specification.  *Id.*  The trial court sentenced Walker to serve the mandatory, indeterminate sentence of 15 year to life in prison on Count One after serving the mandatory three-year sentence on the firearm specification; and it ordered him concurrently to serve a six-month prison term on the Count Two concealed weapon charge.  Walker's aggregate sentence was 18 years-to-life in prison.  ECF Doc. 7-1 at 9-10.

Walker, represented by new counsel, filed a notice of appeal in the Ohio Court of Appeals on November 14, 2005.  ECF Doc. 7-1 at 12.  Walker's merit brief, filed on June 30, 2006, raised three assignments of error:

> I.   THE APPELLANT WAS DENIED A FAIR TRIAL DUE TO THE TRIAL COURT'S REFUSAL TO ALLOW THE DEFENSE TO PRESENT EVIDENCE REGARDING A PRIOR SHOOTING.
>
> II.  THE APPELLANT WAS DENIED A FAIR TRIAL DUE TO IMPROPER COMMENTS MY THE PROSECUTOR DURING CLOSING ARGUMENTS.
>
> III. THE APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

ECF Doc. 7-1 at 14.  The State of Ohio filed an opposition brief on October 17, 2006.  ECF Doc. 7-1 at 35.  The Ohio Court of Appeals affirmed Walker's convictions and sentences in a judgment entry and opinion filed on November 27, 2006.  ECF Doc. 7-1 at 65.  *See State v. Walker*, 5th Dist. Stark No. 2005CA00286, 2006-Ohio-6240, 2006 Ohio App. LEXIS 6217 (November 26, 2007).  No issue raised in the initial appeal is pertinent to the claim asserted in Walker's habeas petition.[1]  Walker did not pursue further direct appeal to the Ohio Supreme Court.

### B.     Application to file Delayed Motion for New Trial

On November 2, 2015, Walker, represented by new counsel, filed an application for leave to filed delayed motion for new trial and requested a hearing.  ECF Doc. 7-1 at 99.  The motion presented two affidavits.  The first, from eyewitness Julius Edwards, dated February 1, 2013, asserted that his trial testimony that defendant shot and killed the victim, Michael Cheek, was false.  He asserted, among other things, that Walker did not have a gun and did not shoot the victim.  ECF Doc. 7-1 at 146.  The second affidavit, from Shyeaka Sianna Ball, dated June 19, 2015, asserted that she was victim Michael Cheek's sister.  She stated that a couple of days after her brother's death, Julius Edwards stated in her presence, "I don't know how I'm going to look their family in the face and tell them that I shot my best friend."  Ms. Ball's affidavit also stated that he (Edwards) had in fact shot and killed Michael Cheek.  Ms. Ball further stated that she, then a ten-year-old, tried to relay this information to her mother but was told to "mind her own business and stay out of adult business."  ECF Doc. 7-1 at 143.

---

[1] Walker also filed a motion for preparation of a complete transcript at the state's expense.  ECF Doc. 7-1 at 91.  The trial court denied the motion.  ECF Doc. 7-1 at 94.  Walker did not appeal.  And he filed a motion to waive court costs.  ECF Doc. 7-1 at 95.  The trial court granted the motion.  ECF Doc. 7-1 at 98.  None of the issues raised in these filings is pertinent to the issue raised in Walker's habeas petition.

The trial court took no immediate action on Walker's application to file the new trial motion.  And the state filed no response.  On March 9, 2016, Walker filed a motion for a hearing and/or a ruling on his application.  ECF Doc. 7-1 at 147.  Five days later, on March 14, 2016, the trial court filed a journal entry denying Walker leave to file a motion for new trial.  The trial court's journal entry simply stated: "Upon full review, the Court finds said motion not well taken and hereby Overrules the same.  It is therefore Ordered that Defendant's motion be and hereby is, denied."  ECF Doc. 7-1 at 156.  Two weeks later, on March 31, 2016, the state filed a "Reply to Application for Leave to File Delayed Motion for New Trial," apparently unaware the trial court had already denied the motion.  ECF Doc. 7-1 at 157.

The state's belated response to Walker's application asserted that Walker should not be granted leave to file his motion for new trial because: (i) he did not explain how he came into possession of the two affidavits; (ii) he failed to explain why he did noting with the Edwards affidavit for two years before he filed his application; (iii) the Edwards affidavit, which sought to recant key parts of Edwards's trial testimony was not only in conflict with his trial testimony but also in conflict with Edwards's statement to the police made within hours of the shooting; and (iv) the Edwards and Ball affidavits conflicted with one another about who shot Michael Cheek, thereby rendering both of them incredible.  The state argued that Walker had not met the "exacting" standards of Ohio Crim. R. 33 for being able to move for a new trial.  ECF Doc. 7-1 at 160-171.

The trial court issued a second order denying Walker's application, on April 15, 2016, which simply stated: "This matter came on for consideration on the application for leave to filed delayed motion for new trial and the reply of the State of Ohio.  For the reasons stated in the reply of the State of Ohio, the application is overruled.  It is so ordered."  ECF Doc. 7-1 at 185.

4

Two days earlier, on April 13, 2016, Walker, represented by new counsel, filed a notice of appeal in the Ohio Court of Appeals concerning the trial court's March 14. 2016 order denying his application.  ECF Doc. 7-1 at 186.  Walker filed his merit brief on June 16, 2016.  ECF Doc. 7-1 at 188.  Walker's brief raised one assignment of error, which was identical to his Ground One claim for habeas relief:

> THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR LEAVE TO FILE A MOTION FOR NEW TRIAL WITHOUT A HEARING, AND THUS DENIED APPELLANT HIS DUE PROCESS RIGHT TO REVIEW OF THE SUBSTANTIVE AND LEGAL MERITS OF A MOTION FOR NEW TRIAL.

The state filed an opposition brief on August 16, 2016.  ECF Doc. 7-1 at 208.  The Ohio Court of Appeals affirmed the trial court's ruling in an opinion issued on October 11, 2016.  ECF Doc. 7-1 at 228.  *See State v. Walker*, Fifth Dist. Stark No. 2016CA00076, 2016-Ohio-7314; 2016 Ohio App. LEXIS 4170 (October 11, 2016).

Walker did not file a timely appeal to the Ohio Supreme Court.  He did, however, file a *pro se* notice of appeal and motion for leave to file delayed appeal on February 13, 2017.[2]  ECF Doc. 7-1 at 239, 242.  In an entry filed on April 19, 2017, the Ohio Supreme Court denied Walker's motion and dismissed his case.  ECF Doc. 7-1 at 258, *State v. Walker*, 2017-Ohio-1427.  Thus, Walker's habeas claim has never been subjected to review through one complete round of the Ohio appeal process.

Walker did not appeal to the United States Supreme Court.

---

[2] Walker's filings bear Ohio Supreme Court "Received" date stamps for January 20, 2017; however, the filings also bear a "Filed" date stamp for February 13, 2017.  The Ohio Supreme Court docket for this case indicates Walker did not file his affidavit of indigence until February 13, 2017.  This court presumes the notice of appeal and motion for leave to file delayed appeal were held for filing until Walker filed his affidavit of indigence because he probably did not tender the required filing fee with his original materials.

### III.     Federal Habeas Corpus Petition

On November 6, 2017, Walker placed his *pro se* petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2254 in the prison mailing system.  ECF Doc. 1.  Walker's petition raises

a single claim for relief:

> **GROUND ONE:** THE TRIAL COURT ERRED IN DENYING APPELLANT'S
> MOTION FOR LEAVE TO FILE A MOTION FOR NEW TRIAL WITHOUT A
> HEARING, AND THUS DENIED APPELLANT HIS DUE PROCESS RIGHT
> TO A REVIEW OF THE SUBSTANTIVE AND LEGAL MERITS OF A
> MOTION FOR NEW TRIAL

ECF Doc. 1 at 4-5.

Warden Schweitzer filed a return of writ (ECF Doc. 7) which advanced three

contentions: (1) Walker's Ground One claim raised only a noncognizable issue of state

law, and even if it were assumed that his basic contention is that his federal due process

rights were violated because of an egregious violation of his right to a fundamentally fair

trial, the record could not support such a finding; (2) to the extent Walker's Ground One

claim challenges the trial court's procedural basis for the determination of his new trial

motion (i.e., without a hearing), such claim is not cognizable in a federal habeas case

because it does not directly challenge the judgment of conviction; and (3) any claim

Walker has regarding the Ohio courts' determination of his application for leave to file a

delayed motion for new trial has been procedurally defaulted for two reasons: (i) Walker

waited too long to file the new trial motion after obtaining the affidavit of Shyeaka Ball,

and (ii) Walker never obtained Ohio Supreme Court review of the court of appeals' and

trial court's rulings on that issue.

Walker filed a traverse on February 15, 2018.  ECF Doc. 13.  Walker slightly

altered his Ground One claim for relief by including references to the U.S. Constitution:

> THE TRIAL COURT ERRED IN DENYING PETITIONER MOTION FOR
> LEAVE TO FILE A MOTION FOR NEW TRIAL WITHOUT A HEARING,
> AND THUS DENIED PETITIONER HIS (5) FIFTH AND (14) FOURTEENTH
> AMENDMENT RIGHT TO DUE PROCESS TO A REVIEW OF THE
> SUBSTANTIVE AND LEGAL MERITS OF A MOTION FOR NEW TRIAL

ECF Doc. 13 at 14.

Walker's traverse addresses an issue not before the court: whether an actual innocence claim may be advanced in order to avoid the manifest injustice that would arise *if a time-barred habeas claim were not considered.* ECF Doc. 13 at 10. Likewise, Walker advances the argument that he should be granted equitable tolling of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations. ECF Doc. 13 at 19. Here, the warden has not raised a statute of limitations defense, and Walker's petition appears to have been timely filed. Walker also argues that it is possible to present the denial of a motion for new trial as a federal constitutional violation. ECF Doc. 13 at 12. And Walker contends that even though his claim was presented as a state law issue in the Ohio courts, it may be construed as a federal claim because "the state court applied a state-law standard which is less protective of the federal constitutional right than the federal standard." ECF Doc. 13 at 14. Walker argues that he was denied a fundamentally fair trial by the trial court's ruling on his new trial motion, and he challenges the summary disposal of the motion without hearing. ECF Doc. 13 at 17, 18. He also contends that we may decide his Ground One claim on the merits if the state court decision was contrary to or an unreasonable application of clearly established federal law. ECF Doc. 13 at 18.

## IV. Law and Analysis

### A. Facts

We begin analysis of Walker's petition with a recitation of the factual findings of the Ohio courts. The Ohio Court of Appeals summarized the facts pertinent to Walker's Ground

One claim in its disposition of Walker's appeal of the trial court's denial of his application for leave to file a delayed motion for new trial:

{¶ 2}   The relevant facts, as taken, in relevant part, from this Court's Opinion in *State v. Walker,* 5th Dist. Stark No. 2005-CA-00286, 2006-Ohio-6240, are as follows.

{¶ 3}   Michael Cheek, Aubrey Williams, and Julius Edwards were longtime friends and also members of a Canton gang known as the "Northwest Shorb Block." On July 29, 2005, the three were hanging out with a fourth man, William Friedman, who was Cheek's cousin. The four spent the day together and were drinking when they made plans to go to a Canton bar called Brick City.

{¶ 4}   Williams drove the four in a Buick Regal car belonging to Michael Cheek's mother. They decided to go to the Hall of Fame Fuel Mart to buy new t-shirts before they went to the bar. The Hall of Fame Fuel Mart is located at 704 Sherrick Road S.E., Canton. Aubrey Williams waited in the car, and the other three entered the store.

{¶ 5}   The City of Canton is divided into roughly four gang "territories." The northwest part of the city is known as the territory of "Northwest Shorb Block." The northeast quadrant is known as the-home of the "Crypts" (sic). The southwest and southeast portions of the city are "Rated," or "Rated R," territory. The Hall of Fame Fuel Mart is located in what is considered to be "Rated" territory.

{¶ 6}   Inside the store, Michael Cheek, Julius Edwards, and William Friedman encountered appellant Steven Walker. Appellant was at one of the store's two cash registers, arguing with clerk Hussin Almuzerwi over the price of a shirt. A verbal confrontation ensued between appellant and Cheek's group. In the words of Julius Edwards, "We got out of the car and go in the store, we see Stevie, you know, in there hollering, talking about Rated." (1T. at 209). In Edwards' estimation, appellant was "letting it be known" that he was "Rated, flat-out."

{¶ 7}   The group selected and paid for their t-shirts as the verbal back-and-forth with appellant continued. The tension escalated. Edwards described appellant as relentlessly baiting the three: "he's still walking up on it." (1T. at 211). At this point, Michael Cheek had enough and told Edwards that he was going to hit appellant. Cheek proceeded to strike appellant, knocking him into a candy rack. Appellant fell to the ground.

{¶ 8}   Cheek, Friedman, and Edwards hurried out of the store. Edwards looked back at appellant and saw him reaching for something. Clerk Hussin Almuzerwi

also saw appellant reach for something at his waist. Julius Edwards described what he saw as a "burner," a gun or pistol. Cheek, Edwards, and Friedman took off running. Cheek ran in the direction of the Southeast Community Center, and Edwards and Friedman ran toward the car. (1T. at 211).

{¶ 9}   Julius Edwards testified that appellant ran out of the store "with the burner already out" and fired at least four to five times at Michael Cheek as he fled. Cheek fell to the ground. Appellant pointed the gun at Edwards and Friedman; Edwards said that the gun "clicked." Appellant got into his own car and left the scene. (1 T. at 211; 213-215; 218).

{¶ 10} Edwards admitted that he is a member of the Shorb Block gang but claimed that Williams, Cheek, and Friedman were not. He also claimed not to know whether appellant was affiliated with any gang. Julius Edwards did identify appellant as the shooter. He stated that appellant had people "with" him, presumably in his car. (1T. at 215; 216-217). Edwards also testified that no one in Michael Cheek's group that night had a gun.

{¶ 11} Aubrey Williams watched the shooting from the driver's seat of the car. Cheek, Friedman, and Edwards had been in the store only about five minutes when Cheek came running out and turned left. He was followed by Edwards and then Friedman, who turned right, toward the car. Williams saw appellant come out after the group, pointing a gun at Cheek.

{¶ 12} Cheek got about fifteen or twenty feet from the door of the store when appellant fired the gun and Cheek dropped to the ground. Williams recalled that appellant fired the gun more than once but he was not sure how many times. Williams saw appellant get into a black Taurus and drive away. Williams testified that no one in the Buick Regal that night had a gun. He identified appellant as the person who shot Michael Cheek, and testified that there was no doubt in his mind that appellant was the shooter.

{¶ 13} Both Williams and Edwards described the final moments of the life of Michael Cheek. They ran to their friend as he lay on the ground. Cheek told them that he couldn't feel his legs. Williams, Edwards, and Friedman tried to pick up Cheek in an attempt to carry him to the car, but bystanders advised them not to move him. Cheek stated that he could not feel his body anymore. Williams placed his hand under Cheek's head as Cheek coughed and his eyes rolled back into his head.

{¶ 14} Emergency medical personnel and police arrived. Patrolman Michael Nordick lifted Cheek from the large pool of blood in which he lay, and noted an entrance wound in his back.

{¶ 15} Cheek was transported to Aultman Hospital. Edwards and Williams also went to Aultman and were told that Cheek was dead. Patrolman Nordick questioned Edwards at the hospital, and Edwards told him that appellant was the shooter.

{¶ 16} At the conclusion of the jury trial and the end of deliberations, appellant was found guilty as charged. As memorialized in an Entry filed on October 31, 2005, the trial court sentenced appellant to an aggregate prison term of eighteen years to life.

* * *

{¶ 30} Appellant, in the case sub judice, argued that he had newly discovered evidence that would warrant a new trial. As is stated above, appellant supported his application with the June 19, 2015 affidavit of Shyeaka Sianna Ball, and the February 1, 2013 affidavit from Julius Edwards. As noted by appellee, with respect to Edwards' affidavit, neither the affidavit nor appellant's application explains how the affidavit was prepared, what lead to its preparation years after appellant's conviction was affirmed, or how and when it ended up in appellant's possession.

{¶ 31} While Julius Edwards' affidavit was dated February 1, 2013, appellant did not file his application until November 2, 2015. Appellant, in his application, stated that Edwards' affidavit, standing alone, was not sufficient evidence to warrant the granting of a new trial, but argues that such affidavit, taken in conjunction with the June 19, 2015 affidavit of Shyeaka Sianna Ball, does warrant a new trial.

{¶ 32} As an initial matter, we note that appellant does not explain why he waited for over five months after obtaining Ball's affidavit to file his application. Moreover, we find that the two affidavits contradict each other. While Ball, in her affidavit, stated that she heard Julius Edwards state in 2005 that he had shot and killed Michael Cheek and that the shooting was accidental, Edwards, in his affidavit, does not accept responsibility but rather points to some unknown and unnamed gunman. As noted by appellee, Ball's later affidavit destroys the credibility of Edwards' earlier affidavit and the credibility of Ball's affidavit is destroyed by Edwards' affidavit.

{¶ 33} Moreover, both affidavits are contradicted by the trial evidence, which is set forth above. There was testimony that Hussin Almuzerwi, the store clerk saw appellant reach for something at his waist. Aubrey Williams, a witness, testified that he saw appellant run out of the store. He identified appellant as the person

10

who shot Michael Cheek, and testified that there was no doubt in his mind that appellant was the shooter. At trial, Julius Edwards' testimony corroborated Williams' version of events and was consistent with the statement that he gave to police on July 30, 2005, a copy of which was attached to appellee's March 31, 2016 reply. In his statement to police, Edwards identified appellant as the shooter.

{¶ 34}  Based on the foregoing, we find that the trial court did not err in denying appellant's Application for Leave to File Delayed Motion for New Trial without a hearing. The trial court's decision was not arbitrary, unconscionable or unreasonable. We find that appellant failed to show by clear and convincing evidence that he was unavoidably prevented from the discovery of the evidence upon which he relied or that the new evidence disclosed a strong probability that it would change the result of a new trial if granted.

*State v. Walker*, Fifth Dist. Stark No. 2016CA00076, 2016-Ohio-7314; 2016 Ohio App. LEXIS 4170 (October 11, 2016) (ECF Doc. 7-1 at 229-232).  These state court factual findings are presumed correct unless Walker rebuts them by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Moore v. Mitchell,* 708 F.3d 760 (6th Cir. 2013).

### B.      Procedural Default/Exhaustion

Warden Schweitzer correctly argues that Walker's claim is procedurally defaulted because he failed to raise it in a timely appeal to the Ohio Supreme Court.  *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). "Before [a federal court may] reach the merits of a habeas petition, . . . [it must] review whether the petitioner has satisfied the [two] procedural requirements for litigating his federal claim in state court." *Gerth v. Warden, Allen Oakwood Corr. Inst.*, No. 17-4091, 2019 U.S. App. LEXIS 27788 *9 (6th Cir. Sept. 16, 2019) (citing *Bickham v. Winn*, 888 F.3d 248, 250-51 (6th Cir. 2018), and *Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2000)).  "First, the petitioner must [have] exhaust[ed] all available opportunities to pursue his claim in state court before he may litigate that claim in federal court." *Id.* at *10 (noting that this requirement, rooted in the principles of comity and federalism, seeks to "avoid the unseemly result of a federal court upsetting a state court conviction without first according

the state courts an opportunity to correct a constitutional violation" (internal quotations and alterations omitted); 28 U.S.C. § 2254(b)(1)(A). The petitioner must have given the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v.* 526 U.S. at 845; *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).

"Second, and relatedly, the procedural default doctrine bars [federal habeas] review if the petitioner has not followed the state's procedural requirements for presenting his claim in state court." *Gerth*, 2019 U.S. App. LEXIS 27788 at *10. A federal court usually may not review a state prisoner's habeas claim if (1) the prisoner broke a state procedural rule, (2) the state court enforced the rule, and (3) the procedural forfeiture was an adequate and independent ground for denying relief. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). It is this second type of procedural default that bars Walker's claim.

Walker did not raise his Ground One claim in the Ohio Supreme Court within the 45-day time limit set under Ohio law for appealing a court of appeals decision. Ohio S.Ct.Prac.R. 7.01. Under that rule, Walker's notice of appeal would have been due in the Ohio Supreme Court on November 25, 2016. Walker attempted to remedy that default by filing a motion for a delayed appeal on February 13, 2017. ECF Doc. 7-1 at 242. But the Ohio Supreme Court denied the motion and dismissed the case on April 19, 2017. ECF Doc. 7-1 at 258.

In denying Walker's motion for a delayed appeal, the Ohio Supreme Court applied a well-established procedural rule barring Walker's claim. The Sixth Circuit has held that the Ohio Supreme Court's timeliness requirement is an adequate and independent procedural rule and non-compliance waives federal review. *Smith v. State of Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 431-432 (6th Cir. 2006), citing *Bonilla v. Hurley,* 370 F.3d 494, 497 (6th Cir. 2004).

Accordingly, because Walker failed to meet the requirement of a state procedural rule, and, as a result, never had his claim reviewed by the Ohio Supreme Court, his claim is procedurally defaulted unless he can show cause and prejudice to excuse his failure to exhaust it in state court.

### 1.    Cause for Procedural Default

A preliminary finding that a claim has been procedurally defaulted does not end the court's analysis of the issue.  In *Maupin,* 785 F.2d 135, the Sixth Circuit recognized that, even if a claim is procedurally defaulted, the court may consider the merits of the claim if "the petitioner can show cause for not following the procedural rule and that failure to review the claim would result in prejudice or a miscarriage of justice."  *Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001) (citing *Maupin*, 785 F.2d at 138) (further citations omitted).

Walker's traverse argues that basic concepts of justice are lost when a concern for procedure becomes more important than "basic fairness."  ECF Doc. 13 at 2.  He also cited, as cause for his delay, "his inability to continue paying his appellate counsel and his own inexperience in perfecting an appeal."  ECF Doc. 13 at 8.  Walker's § 2254 petition provided different information.  When asked for an explanation as to why his claim for relief had not been exhausted, he stated: "I had just got out of segregation and was not able to obtain my legal work[;] and I filed an memorandum in support of jurisdiction but I was denied because I didn't know how to fill out the form properly."  ECF Doc. 1 at 5.  He also stated that he did not pursue a further appeal to the highest state court for "Lack of knowledge and I was not informed I could appeal any further."  ECF Doc. 1 at 4.  Walker's motion for leave to file a delayed appeal in the Ohio Supreme Court contained additional information:

> The reason or reasons I did not file this case on time is because (1) I had a paid lawyer and I still owed him some money that my family was suppose[d] to pay but stop answering my calls and my lawyer calls.  I felt betrayed and was not in good spirits[.] (2) When I got back in good spirits I had to learn to file Pro Se[,] so

> I went to the law library and had to teach myself.  I[t] was a little hard for me so it took some time.  As soon as I understood the process[,] I file[d] the Motion and sent it in to the Supreme Court[.]

ECF Doc. 7-1 at 243.  Walker's accompanying affidavit asserted that his family had lied to him about paying his lawyer; and he indicated he had no family to help him.  ECF Doc. 7-1 at 246.

Taking Walker's statements together and giving him the benefit of the doubt given his *pro se* status, we must construe Walker's "cause" argument to be either that he was not aware he could seek Ohio Supreme Court review of the court of appeals' affirmance of the trial court's order; or we could find that he was aware but was prevented from timely filing his Ohio Supreme Court appeal due to having just gotten out of segregation coupled with his unfamiliarity with the process for seeking further review before the Ohio Supreme Court.

A petitioner may overcome a procedural default by demonstrating something caused him to break the state procedural rule and that actual prejudice resulted from the alleged violation of federal law; or he can show that there would be a "fundamental miscarriage of justice" if the claim is not considered.  *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L.Ed.2d 640 (1991).  Walker argues that his appeal to the Ohio Supreme Court was untimely due to a combination of factors: lack of time, lack of familiarity of the process, unavailability of his legal materials due to a recent release from segregation, and lack of knowledge of a right to make a further appeal.  Some of these factors conflict with one another.  For example, Walker cannot simultaneously sustain an argument that he didn't work on his Supreme Court appeal because he didn't have his materials and because he didn't know he had a right to pursue such an appeal.  If he didn't know he had the right to such an appeal, he would not have been working on the appeal and wouldn't have had any need for his legal materials.

14

I conclude that Walker's seemingly conflicting statements about why did not appeal to the Ohio Supreme Court result from his conflation of his reasons why he failed to pursue his *two* opportunities for an Ohio Supreme Court appeal.  It makes sense that he did not pursue his direct appeal to the Ohio Supreme Court in 2006 or early 2007 because he did not know he had a right to seek a further appeal.  It also makes sense that he *was* aware of his right to seek an Ohio Supreme Court appeal in late 2016 but was unable to get it filed in time because he'd been in segregation, did not have his materials and was unfamiliar with the process.

The problem for Walker is that "cause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him."  *Id.* "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule."  *Id.*  Focusing on Walker's arguments for cause, I conclude that he is contending he missed his Ohio Supreme Court filing deadline because: (i) he was unable to file because he had been in segregation; (ii) he did not have access to his legal materials; and (iii) he was unfamiliar with the process for filling out his Supreme Court paperwork.  The latter two claims plainly do not establish sufficient cause.

The law is well settled that unfamiliarity with the law is not something "external to the defense" and does not establish cause.  Indeed, the Sixth Circuit specifically has held that a petitioner's *pro se* status and ignorance of the law and procedural requirements are insufficient to establish cause to excuse his procedural default because those factors are not external to his defense. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (citing *Hanna v. Conley*, 49 F.3d 1193, 1197 (6th Cir. 1995).

15

Likewise, claims that legal materials were unavailable does not bear upon whether a one-page notice of appeal could have been filed in the Ohio Supreme Court.  Moreover, courts have repeatedly rejected unsupported assertions that legal materials were unavailable as sufficient cause to excuse a procedural default.  Walker impliedly argues, with no evidentiary support, that his delayed appeal to the Ohio Supreme Court and the resulting procedural default resulted from him not having his legal materials.  District courts have rejected similar unsubstantiated claims that a prison transfer constituted cause to excuse a procedural default.  *See, e.g., Rahe v. Jackson*, No. 2:09 CV 98, 2010 WL 3656049, at *1 (S.D. Ohio Sept. 15, 2010) (finding "nothing in the record" supported petitioner's allegation that a loss of legal materials during a prison transfer, among other things, established cause to excuse a procedural default); *United States v. Muniz*, No. 91 C 1583, at *3 (N.D. Ill. Apr. 20, 1992) ("Had Muniz attempted to buttress this assertion with evidence that prison transfers had indeed prevented him from receiving notice of the June 12, 1990 minute order, he might well have established cause excusing his procedural default.")

Finally, while Walker's inability to file an Ohio Supreme Court appeal because he was in segregation *might* have provided a basis for a showing of cause, *see, e.g. Toyer v. Turner*, 2016 U.S. Dist. LEXIS 109224 (2016), his mere mention of having been in segregation is not enough. The court has no way to know when he was in segregated housing, when he got out, how much time he had left to file his Ohio Supreme Court notice of appeal, etc.  In other words, a mere claim of being in segregation, without more, does not establish cause to excuse a procedural default.  The district courts' analyses in the following cases support that conclusion.  *Green v. Butts*, No. 1:16-cv-607, 2017 U.S. Dist. LEXIS 91054, at *8-11 (S.D. Ind. 2017) (petitioner's segregation was not cause because he did not allege or point to any evidence that his segregation prevented him from filing an appeal, or that he was unable to file a belated appeal when he

returned to general population); *Boone v. Price*, No. 2:15cv556, 2018 U.S. Dist. LEXIS 150617 (M.D. Ala. 2018) (segregation, resulting in lack of access to law library and confiscation of legal documents, was not cause because the petitioner did not show how access to the library or his documents was necessary to file his notice of appeal); *Silva v. Oregon*, 2009 U.S. Dist. LEXIS, at *18 (D. Or. 2009) (segregation was not cause when prison records showed that petitioner had access to his legal materials and filed legal documents during that time); *Jones v. Blackwell*, No. 03-5789, 2005 U.S. Dist. LEXIS 29269, at *8-9 (D.N.J. 2005) (holding that segregation was not cause for failing to file a notice of appeal, especially because petitioner did not explain why he did not file an appeal between his release from segregation and the date his appeal was due); *Lim v. Adler*, No. 1:09-cv-1763, 2010 U.S. Dist. LEXIS 56254, at *12-14 (E.D. Ca. 2010) (same); *Cotton v. Wabash Valley Corr. Facility*, No. 2:15-cv-421, 2016 U.S. Dist. LEXIS 134298, at *3-4 (S.D. Ind. 2016) (same) *United States ex rel. Tellez v. Gilmore*, No. 97-c-3228, 1998 U.S. Dist. LEXIS 2214, at *5-6 (N.D. Ill. 1998) (petitioner's solitary confinement was not cause for failing to file direct appeal when he had limited law library access during solitary confinement); *Thornton v. Watson*, 2010 U.S. Dist. LEXIS 23611, at *8-9 (W.D. Va. 2010) (petitioner's segregation did not excuse procedural default when he did not have access to legal materials until his release when he delayed an additional 10 days after his release before filing his notice of appeal).  The fact that Walker never mentioned having been in segregation in his motion for Ohio Supreme Court delayed appeal suggests that he had not been in segregation immediately prior to the due date for his appeal of the Ohio Court of Appeals decision affirming the trial court's denial of Walker's application for leave to file a delayed appeal.

One way or the other, to show sufficient cause to excuse his procedural default, Walker was required to explain why something out of his control prevented him from filing a timely

Ohio Supreme Court appeal. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). He has not met

that requirement. Walker hasn't offered sufficient cause to excuse his failure to seek Ohio

Supreme Court review. Absent a showing of cause, we need not evaluate whether Walker would

suffer prejudice if we decline to consider his Ground One claim. For that reason, he has not

availed himself of the cause and prejudice exception to procedural default.

### 2.  Actual Innocence

#### a.  Legal Framework

A procedural default also can be excused when a prisoner argues that he is actually

innocent. A federal court may review a procedurally defaulted claim, even in the absence of a

demonstration of cause and prejudice, in order to correct "a fundamental miscarriage of justice,"

as when the petitioner is actually innocent. *Coleman v. Thompson,* 501 U.S. 722, 748, 111 S. Ct.

2546, 115 L. Ed. 2d 640 (1991) (quoting *Engle v. Isaac*, 456 U.S. 107, 135, 102 S. Ct. 1558, 71

L. Ed. 2d 783 (1982)). It is well-established that "'[a]ctual innocence' means factual innocence,

not mere legal insufficiency." *Carter v. Mitchell*, 443 F.3d 517, 538 (6th Cir. 2006) (citing

*Bousley v. United States*, 523 U.S. 614, 623, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998)). For a

petitioner to establish "actual innocence," that petitioner must present new evidence to the

habeas court. *Gulertekin v. Tinnelman-Cooper*, 340 F.3d 415, 427 (6th Cir. Ohio 2003), citing

*Schlup v. Delo*, 513 U.S. 289, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). This "new evidence

[will] not rise to the standard of establishing his actual innocence [if] a reasonable juror still

could have found [petitioner] guilty [beyond a reasonable doubt] even after considering [the]

new evidence." *Jells v. Mitchell,* 538 F.3d 478, 507 (6th Cir. 2008). To say it another way,

actual innocence "does not merely require showing that a reasonable doubt exists in light of the

new evidence, but rather that no reasonable juror would have found the defendant guilty."

*Schlup*, 513 U.S. at 329.  "[T]his innocence gateway is a narrow one. The Supreme Court has cautioned that it 'should open only when a petition presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'"  *Davis v. Bradshaw*, 900 F.3d 315, 326 (6th Cir. 2018), citing *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013).  New evidence, consequently, can only excuse procedural default in "extraordinary" cases.  *Carter,* 443 F.3d at 538.

It is important to emphasize the role of the actual innocence claim in a habeas case. When a habeas petitioner makes a sufficient showing of actual innocence, it only creates a reason to allow a procedurally defaulted claim to be reviewed – and the reason is to prevent a manifest injustice.  But in most cases, that is all an actual innocence claim can do.  The United States Supreme Court and the Sixth Circuit Court of Appeals have plainly ruled that when a habeas petitioner seeks a writ of habeas corpus based on a freestanding claim that he did not commit the crime for which he is in custody, the claim is not cognizable in federal court (except, potentially, in a capital punishment case).  *Cress v. Palmer*, 484 F.3d 844, 854-55 (6th Cir. 2007); *Zuern v. Tate*, 336 F.3d 478, 482, n. 1 (6th Cir. 2003), citing *Herrera*, 506 U.S. 390, 404.  To say it another way, when a state prisoner claims he is innocent, and demonstrates it with new, reliable evidence, all we can do is examine a habeas claim that would otherwise have to be dismissed because of a procedural default.  The courts have expressed this as the actual innocence "gateway" claim.  That is, the actual innocence claim opens a gateway through which the habeas court may proceed to evaluate a defaulted claim.  *Schlup*, 513 U.S. at 315, citing *Herrera v. Collins*, 506 U.S. 390, 404, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993).

Stating that framework is important here because Walker has not made any federal constitutional claim other than his Ground One claim of actual innocence.  And that claim, standing alone, is noncognizable.  Here is the anomalous situation we face.  If Walker has failed to support his actual innocence claim by sufficient new, reliable evidence, this court would be forced to dismiss his Ground One claim because it was procedurally defaulted; the actual innocence gateway would not be open.  On the other hand, if we were to conclude that Walker *had* made a sufficient showing of his actual innocence in order for us to proceed through the gateway to consider the merits of his Ground One claim, we would then be forced to dismiss the claim because it was noncognizable.   The Supreme Court has implied – but not actually held – that a stand-alone actual innocence claim might be available to prevent the *execution* of one who may be actually innocent.  *Herrera*, 506 U.S. at 400; *House v. Bell*, 547 U.S. 518, 554, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006).  But the Supreme Court has never ruled or implied that such a claim can provide a basis for a federal court to order a state prisoner to be *released* or *retried* absent a viable claim that the petitioner's constitutional rights were violated.  And the Sixth Circuit has consistently held such claims to be noncognizable in the absence of any other constitutional violation.  *See, e.g., In Re Russell*, No. 13-3167, 2013 U.S. App. LEXIS 26592 (Aug. 23, 2013), citing *Cress*, 484 F.3d at 854-55.

### b.      Analysis

A gateway actual innocence claim necessarily involves evidence that the jury did not have before it.  The reviewing federal court must "assess how reasonable jurors would react to the overall, newly supplemented record."  *Davis v. Bradshaw*, 900 F.3d 315 (6th Cir. 2019), citing *House v. Bell*, 547 U.S. at 538. And the court must make a "probabilistic determination about what reasonable, properly instructed jurors would do."  *House*, 547 U.S. at 538.  That

determination must "consider all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *Id.* at 537.  And "[t]o prove actual innocence within this context, a petitioner must present new evidence that makes it "more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *McQuiggin v. Perkins,* 569 U.S. 383, 133 S. Ct. 1924, 1935, 185 L. Ed. 2d 1019 (2013) (quoting Schlup, 513 U.S. at 327).  In other words, if we conclude that *any* reasonable juror could have found Walker guilty even in light of the new evidence he relies on, he will not have met his burden of proof.

Walker believes the jury would not have found him guilty had it had the sort of testimony represented by the affidavits of Julius Edwards and Shyeaka Ball.  As the Supreme Court directed in *House*, this court must not only look at those two affidavits, but at all the evidence, whether admissible or not.  All the evidence would include the trial testimony of Edwards as well as his statement to the police given only hours after Michael Cheek was shot.  All the evidence would also include everything admitted into evidence at trial, including, in particular, the testimony of other eyewitnesses: store clerk Hussin Almuzerwi and Walker's companion Aubrey Williams.  Almuzerwi testified that he saw Walker reach for something at his waist after being thrown into a display rack.  And Williams testified that he saw Walker exit the convenience store and shoot in Cheek's direction before getting in a car and driving away.  Julius Edwards told a detective not long after the shooting that Walker was the one who shot Cheek.  And he repeated that statement at trial after first indicting he saw Walker leaving the store with "the burner" already in hand.

Julius Edwards signed an affidavit eight years after Walker's conviction stating that Walker did not have a gun and was not the shooter.  He indicated someone else near the front of

the store shot in Cheek's direction.  A rational juror would have had to decide whether to believe Edwards's after-the-fact affidavit or his immediately-after-the-shooting statement to the police and his nearly contemporaneous trial testimony.  The affidavit and police statement/trial testimony cannot both be true.  The rational juror would have been able to consider the circumstances under which each version was given.  To make the decision even more complicated, the rational juror would have also had to reckon with the affidavit of Shyeaka Ball, which indicated Edwards admitted in her presence to having been Cheek's unintentional killer.

Confronted with these competing versions of what happened, it is quite easy to see that a rational juror could have concluded the following:

- The unexplained circumstances surrounding the appearance of Edwards's affidavit eight years after Walker's conviction call the credibility of the affidavit into question.

- Edwards was intentionally vague about who did the shooting because he was trying to protect himself from prosecution if Walker was exonerated.  But his unwillingness directly to accept responsibility for what he did raises questions about his credibility.

- Ball's version supported the idea that Edwards was the actual shooter.

- But Edwards's statement to the police immediately after the fact was consistent with his own trial testimony and Aubrey Williams' testimony.

- Walker has not tried to discount or explain away the testimony of Aubrey Williams.

- Williams and Almuzerwi's unchallenged testimony were more believable.

Given these rational possible conclusions, it is quite literally impossible for this court to conclude that it is more likely than not that no reasonable juror would have convicted Walker in the light of the new evidence."  *Schlup, 513 U.S. at 327*.  The affidavits of Edwards and Bell suffer from some of the same issues that the Sixth Circuit indicated may be considered in *Allen v. Yukins*, 366 F.3d 396 (6th Cir. 2004).  In *Allen*, the court pointed out that, "[t]he flaw in Allen's

argument, however, is that Light's [a codefendant] affidavit *exculpates* Allen, but does not actually inculpate Light in any way.  Thus, the district court correctly concluded that Light's affidavit was inherently suspect because Light could have signed the affidavit in order to help his codefendant Allen without endangering his own interests." *Id.* at 405-406.  The Sixth Circuit also noted, "Aside from its lack of reliability, Light's affidavit is insufficient to demonstrate that Allen is innocent because Light's assertions are inconsistent with the evidence presented at trial." *Id.* at 406.  Both of these points can be made regarding the Julius Edwards affidavit: although Edwards's statements would exonerate Walker, they certainly did not inculpate Edwards.  And Edwards's affidavit was inconsistent with Aubrey Williams' trial testimony.  The fact that Ball's affidavit somewhat conflicted with Edwards's affidavit rendered it too inherently suspect.

I recommend that the Walker's actual innocence gateway claim be rejected.  Walker simply has not met his burden to show that upon consideration of all the evidence *no* rational juror would have convicted him.  If the Court agrees, then the Court should also conclude that Walker's procedural default of his Ground Once claim cannot be excused; and the claim should be dismissed.

### C.    Cognizability

There are other fundamental reasons why we may not entertain Walker's Ground One claim.  First, Walker only challenges the Ohio courts' ruling on state law issues, and we cannot grant habeas relief based on state law issues.  Second, Walker's Ground One claim is a freestanding claim of actual innocence that we are not permitted to decide.  Finally, habeas relief is not available for alleged errors in how the state conducted post-conviction proceedings.

23

### 1.    Walker Only Challenges a Ruling on a State Law Issue

A review of Walker's application for leave to file a delayed motion for new trial (ECF Doc. 7-1 at 99) and his appellate brief challenging the denial of his application make it plain that he only raised a state law issue, namely whether he qualified for leave to file a new trial motion under Ohio Crim. R. 33.  He cited only the language of the rule and Ohio case law interpreting the rule.  And the Ohio Court of Appeals cited only state law rules and cases in concluding that the trial court's denial of Walker's application to file a delayed motion for new trial should be affirmed.[3]

A claim that alleges only a violation of state law is not cognizable in a federal habeas case, and it must be dismissed on that basis unless the state court's state-law ruling violates a fundamental federal constitutional right.  *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law.").  Further, a petitioner may not convert a claim asserting state law error into a constitutional claim, merely by alleging that the failure to follow a state rule violated his due process rights.  *Rivera v. Illinois*, 556 U.S. 148, 158 (2009) ("The Due Process Clause . . . safeguards not the meticulous

---

[3] Walker's trial court application argued that if the state were to contend that Walker's trial counsel had not been diligent in discovering the content of the Edwards and Ball affidavits around the time of trial, the trial court would then be required to determine whether Walker's trial counsel had rendered ineffective assistance of counsel.  And Walker cited the U.S. Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984).  ECF Doc. 7-1 at 105.  But this did not amount to *Walker* making a claim that his counsel's ineffective assistance provided a basis to grant his request to file a new trial motion.  And neither the state in its belated opposition brief (ECF Doc. 7-1 at 157) nor the Ohio Court of Appeals (ECF Doc. 7-1 at 228) evaluated any issue of ineffective assistance of counsel.  I have noted above that the trial court summarily disposed of Walker's application twice without expressing any reasoning either time.

observance of state procedural prescriptions, but "the fundamental elements of fairness in a criminal trial."); *see also Engle v. Isaac*, 456 U.S. 107, 121 n. 21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted). Moreover, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle*, 502 U.S. at 67-68); *see also Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (stating that a federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure).

Walker has characterized his Ground One claim as a federal rights violation by using the term "due process."  But, the mere recital of that word is not enough to make a state law claim into a federal law issue.  At a minimum, if Walker intended to embody a federal claim within Ground One, he certainly never fairly presented that claim to the Ohio courts for their initial review, as habeas law requires.[4]  AEDPA and innumerable habeas cases make it clear that the state courts must be given a fair opportunity to rule on the federal law claims being asserted. Contentions of federal law which were not resolved on the merits in the state proceeding also cannot be resolved on their merits in a federal habeas case.  *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977).

---

[4] *See Pudelski v. Wilson*, 576 F.3d 595, 605 (6th Cir. 2009), where the Sixth Circuit noted: "Pudelski has framed his claims to the district court and this Court as federal claims, but before the state courts he framed his arguments solely in terms of Ohio law governing motions for new trial and evidentiary issues and never argued that any of his federal rights had been violated."  The court concluded, "[P]etitioner's failure to have the federal claims considered in the state courts results in a procedural default of those claims that bars federal court review. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006)." *Id.*  In order to satisfy the "fair presentation" requirement, a habeas corpus petitioner must present both the factual and legal underpinnings of his claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000), cert. denied, 532 U.S. 958, 121 S. Ct. 1487, 149 L. Ed. 2d 374 (2001); *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987). This means the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law. *Franklin*, 811 F.2d at 325 (citing *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)); see also *Prather v. Rees*, 822 F.2d 1418 (6th Cir. 1987).

State-court rulings on issues of state law may, however, "rise to the level of due process violations [if they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)).  They must be "so egregious that [they] result in a denial of fundamental fairness."  *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  Fundamental fairness under the Due Process Clause is compromised where "the action complained of . . . violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' . . . and which define 'the community's sense of fair play and decency.'"  *Dowling v. United States*, 493 U.S. 342, 352 (1990) (internal citations omitted).  Courts, therefore, '"have defined the category of infractions that violate 'fundamental fairness' very narrowly."  *Id.* (quoting *Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993)).

Walker contends that even though his claim was presented as a state law issue in the Ohio courts, it may be construed as a federal claim because "the state court applied a state-law standard which is less protective of the federal constitutional right than the federal standard."  ECF Doc. 13 at 14.  Walker has not developed this argument and offers no information about the way in which Ohio Crim. R. 33 or the procedures followed by the state court were less protective that they should have been of his federal rights.  Indeed, he has not identified the specific federal right he contends was violated.

This portion of Walker's argument to overcome the noncognizability of his state law claim is too vague and conclusory to help him.  He does not specify the basis for his purported federal claim or provide any developed argumentation.  It is true that as a *pro se* litigant, Walker's filings must be liberally construed.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam) (stating *pro se* complaints are held to "less stringent standards than formal pleadings

drafted by lawyers"); *see also Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985) ("The allegations of a *pro se* habeas petition, though vague and conclusory, are entitled to a liberal construction," and "[t]he appropriate liberal construction requires active interpretation in some cases to construe a *pro se* petition to encompass any allegation stating federal relief" (internal quotation marks and citations omitted)).  But principles requiring generous construction of *pro se* pleadings are not without limits.  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985).  District courts are not required to conjure up questions never squarely presented to them or to construct full-blown claims from sentence fragments.  *Id.* at 1278.  To do so would "require . . . [the courts] to explore exhaustively all potential claims of a *pro se* plaintiff, . . . [and] would . . . transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party."  *Id.*; *see also Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001) ("Although liberal construction requires active interpretation of the filings of a pro se litigant, . . . it . . . does not require a court to conjure allegations on a litigant's behalf . . . .") (internal citations omitted).  Such is the case here, where even liberally construed, Walker's argument that Ohio's delayed new trial procedures were insufficient to protect his unnamed federal rights does not contain sufficiently specific allegations to reasonably state a valid federal claim.

As noted above, federal habeas courts may consider challenges to rulings on state law claims when the state court rulings on state law issues are "so egregious that [they] result in a denial of fundamental fairness."  *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  Walker makes this contention.  ECF Doc. 13 at 18.  Walker argues that the trial court's denial of his motion for new trial was so egregious that it violated his right to a fundamentally fair trial under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.  ECF Doc. 13 at

18.  In support, Walker cites *Fleming v. Metrish*, 556 F.3d 520, 535 (6th Cir. 2009) and *Baze v. Parker*, 371 F.3d 310, 324 (6th Cir. 2004).  Neither case provides him any support.  Neither case involved a claim that a state court violated a person's right to a fair trial by denying him leave to file a motion for new trial based on newly discovered evidence.  Instead, each case involved a claim that a state trial court denied someone a fair trial when it excluded testimony from witnesses the habeas petitioner sought to call at trial.  In both cases the habeas petition was denied in the district court, and that denial was affirmed by the Sixth Circuit.  This is an important distinction.

Normally, as pointed out in *Fleming*, an issue of whether a trial court erred in excluding witness testimony at trial involves only a question of state law.  If raised in a federal habeas case, such a claim would not be cognizable.  But if it can be established that the ruling excluding witnesses was so fundamentally flawed that the habeas petitioner did not get a fair trial, the ruling can be evaluated in federal court.  Here, the issue Walker presents is not whether he got a fair trial initially; he makes no such claim.  Walker's issue seems to be that the trial court denied his due process rights by not granting him a hearing on his application for leave to file a delayed motion for new trial.  ECF Doc. 13 at 18 ("A defendant is entitled to a hearing on his motion for leave if he submits 'documents that on their face support his claim that he was unavoidably prevented from timely discovering the evidence. (state law citation omitted)."  *Id.*  Walker contends that the trial court's summary disposition of his motion failed to satisfy the requirements of due process.  *Id.*  As discussed in section IV(C)(3) at page 31 below, this claim is noncognizable.

Liberally construing Walker's claim, it appears he is contending that is that without a new trial at which his two witnesses, Edwards and Ball would testify, he has been wrongfully

28

convicted.  This is a freestanding actual innocence claim.  As discussed in the next section, IV(C)(2), freestanding innocence claims are also noncognizable.  Even if that were not so, it is readily apparent that the Ohio Court of Appeals carefully considered Walker's arguments and concluded that the affidavits of Edwards and Bell "destroyed the credibility" of one another (ECF Doc. 7-1 at 236, *State v. Walker*, 2016-Ohio-7314 at ¶ 32).  Further, the Ohio Court of Appeals concluded that the affidavits were contradicted by the trial evidence and contradicted Edwards's statement to the police in which he identified Walker as the person who shot Michael Cheek.  (ECF Doc. 7-1 at 237, *State v. Walker*, 2016-Ohio-7314 at ¶ 33).  There is nothing from this analysis to suggest the Ohio Court of Appeals (or the trial court) made a decision that was so egregiously wrong that Walker was denied a right to a fundamentally fair trial.

Because Walker's Ground One claim merely challenges the Ohio courts' handling of his application for leave to file a delayed appeal under Ohio Crim. R. 33, and because he has not met his burden to show that he was denied a fundamentally fair trial, he has not raised an issue that is cognizable in a federal habeas corpus case.  Should the Court prefer to decide Walker's Ground One claim on this basis, it must be dismissed.

### 2.  Walker Only Raises a Noncognizable Freestanding Innocence Claim

Walker's only claim before this court is that he should be released from custody because he is actually innocent of the murder of Michael Cheek.  As summarized above, the United States Supreme Court has never recognized a right to habeas relief for a freestanding claim of actual innocence in a case in which the petitioner is not facing a death penalty.  And the Sixth Circuit has "repeatedly indicated such claims are not cognizable on habeas."  *Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007); *Zuern v. Tate*, 336 F.3d 478, 482 n.1 (6th Cir. 2003) ("The Supreme Court has held that newly discovered evidence does not constitute a freestanding

ground for federal habeas relief but, rather, that the newly discovered evidence can only be reviewed as it relates to an 'independent constitutional violation occurring in the underlying state criminal proceeding'" (quoting *Herrera [v. Collins]*, 506 U.S. at 400)); *Staley v. Jones*, 239 F.3d 769, 780 n.12 (6th Cir. 2001) (federal habeas jurisdiction "require[s] a claim of legal error in the original proceedings").  *See also Hodgson v. Warren*, 622 F.3d 591 (6th Cir. 2010) ("The district court reasoned that proof of a constitutional violation (here, ineffective assistance of counsel) can serve as a gateway for a freestanding claim of actual innocence. The law is actually the reverse: '[A] claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'"); *In re Russell*, No. 13-2167, 2013 U.S. App. LEXIS 26592, *4 (6th Cir. August 23, 2013) (claims of actual innocence, such as Russell's, which are uncoupled with allegations of constitutional error, are not cognizable in federal habeas proceedings under § 2254.).

Decisively for our purposes, the Supreme Court in *Herrera* reviewed its habeas jurisprudence and observed: "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera*, 506 U.S. at 400.  Unlike many of the reported cases, Walker has asserted only one claim, that the state courts violated his due process rights by not allowing him to present his motion for new trial.  This is a freestanding claim of actual innocence.  We are not authorized to consider such a claim under AEDPA.  I make the additional recommendation that Walker's Ground One claim be dismissed on the ground that it asserts only noncognizable claim.

### 3.    Walker Only Challenges a State Post-Conviction Proceeding

Walker's Ground One claim is entirely focused upon the denial of his Ohio Crim. R. 33 application for leave to file a delayed motion for new trial.  It makes no claim whatsoever that his constitutional rights were violated in his original proceedings.  As a result, Walker is not seeking a direct reversal of his original conviction, but only the opportunity for a hearing on his new trial motion.  Because Walker's claim only relates to a post-conviction proceeding, it does not raise an issue that may be considered in a habeas case.

In *Cress v. Palmer*, 848 F.3d 844 (6th Cir. 2007), petitioner Cress sought habeas corpus relief after the state trial courts ultimately rejected his request for a new trial based on an affidavit of one witness who sought to "take back" her trial testimony and an affidavit of another person who had confessed to the murder for which Cress was convicted.  Like Walker, Cress filed his new trial motion many years after his original conviction.  The Sixth Circuit concluded Cress had not raised a cognizable habeas claim: "The easiest claim to analyze is the petitioner's challenge to the validity of the state court's conduct of his post-conviction litigation, with respect to the denial of the opportunity to present recantation evidence. As the district court noted, the Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review. *See Kirby v. Dutton*, 794 F.2d 245, 246-47 (6th Cir. 1986); *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002)."  *Id.* at 853.  The court explained the reasoning from the *Kirby* case, noting that the writ of habeas corpus may only be used to secure release from custody for errors committed in the original proceedings leading to conviction:

> Accordingly, we have held repeatedly that "the scope of the writ [does not] reach this second tier of complaints about deficiencies in state post-conviction proceedings," noting that "the writ is not the proper means" to challenge "collateral matters" as opposed to "the underlying state conviction giving rise to the prisoner's incarceration." [*Kirby*] *at 248, 247*; *see also Alley v. Bell*, 307 F.3d 380, 387 (6th Cir. 2002) ("error committed during state post-conviction

proceedings can not [*sic* ] provide a basis for federal habeas relief" (citing *Kirby*, 794 F.2d at 247)); *Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir. 2001) ("habeas corpus cannot be used to mount challenges to a state's scheme of post-conviction relief").

*Cress*, 484 F.3d at 853.  In *Pudelski v. Wilson*, 576 F.3d 595, 608 (6th Cir. 2009) the court indicated that "*Kirby* is still good law in the Sixth Circuit."[5]  Because Walker's Ground One claim is nearly identical to the claim found noncognizable in *Cress*, I recommend – should the Court determine it would be appropriate to do so – that the claim be dismissed on the additional ground that habeas litigation is not the proper means to challenge post-conviction rulings on claims that do not directly attack the judgment of conviction.

### D.    Merits

If we were to review the merits of Walker's Ground One claim despite the procedural default and cognizability barriers discussed above, we would apply the standard incorporated in AEDPA, 28 U.S.C. § 2254(d).  That provision forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Although not expressly characterized as a federal claim, Walker presented his due process argument concerning the denial of his new trial motion to the Ohio Court of Appeals.  ECF Doc. 7-1 at 190.  That court found no abuse of discretion in the trial court's

---

[5] In *Pudelski*, the Sixth Circuit distinguished *Kirby* and reviewed the merits of the due process claim based on the denial of a newly-discovered-evidence new trial motion, because Pudelski had sought – and been denied – a new trial *before* his conviction became final upon direct review.  Thus, the court found that Pudelski's new trial motion was not truly a post-conviction collateral proceeding.

decision not to grant Walker a hearing because of the both the credibility issues in and contradictory facts asserted in Walker's affidavits.  ECF Doc. 7-1 at 237; *State v. Walker*, 2016-Ohio-7314 at ¶¶ 33-34.  And it found Walker had not met the Ohio Crim. R. 33 standard for granting a new trial based on newly discovered evidence.  ECF Doc. 7-1 at 234; *State v. Walker*, 2016-Ohio-7314 at ¶ 24.

Walker has acknowledged he is not entitled to habeas relief unless he can show that a decision of the Ohio courts was contrary to or an unreasonable application of clearly established federal law embodied in established United State Supreme Court precedent.  ECF Doc. 13 at 18. Despite his recitation of the correct AEDPA and U.S. Supreme Court standard, Walker has not cited any United States Supreme Court precedent that the Ohio Court of Appeals' decision was contrary to or an unreasonable application of.  This is not surprising.  The Supreme Court has made it clear in *Herrera* and *House* that it has never recognized a federal issue in freestanding actual innocence habeas claims in any non-capital punishment setting.

Ohio is different.  As Ohio Crim. R. 33 and the cases Walker has relied on make clear, a person convicted of a felony offense in Ohio may request a new trial based on newly discovered evidence.  An Ohio court has the discretion to grant or deny a hearing on such a request.  And an Ohio Court may grant a new trial when the convicted person submits newly discovered evidence that demonstrates the strong probability of a different outcome at trial.  *See e.g. State v. Hawkins*, 66 Ohio St.3d 339, 350 (1993); *Dayton v. Martin*, 43 Ohio App.3d 87 (2d Dist. App. 1987). Because the Supreme Court has not recognized a comparable federal right in a habeas case, it is never possible for an Ohio Court's denial of a new trial motion to be either contrary to or an unreasonable application of a Supreme Court decision.  A state court does not act contrary to

clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

Walker cannot be faulted for thinking that a federal habeas court should be able to provide another level of review to correct every state court decision that ran afoul of the constitution.  But that is not so.  Rather, § 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal."  *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (internal quotation marks omitted).  A petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.* at 103. This is a very high standard, which the Supreme Court has readily acknowledged: "If this standard is difficult to meet, that is because it is meant to be."  *Id.* at 102.  But we cannot even get to that stringent analysis if the Supreme Court has not recognized a federal right in the first place.  Because the Supreme Court has not yet concluded that a state prisoner has a federal right to a hearing on every new trial motion or a right to a new trial based on newly discovered evidence which a petitioner claims demonstrates his actual innocence, Walker's claim would fail on the merits even if not procedurally defaulted.

34

## V.     Recommendation

Because Walker's Ground One claim is procedurally defaulted, raises only issues that are

noncognizable in a federal habeas case, and would otherwise fail on the merits, I recommend that

the court DISMISS the claim and DENY Walker's petition for writ of habeas corpus.

Dated: February 7, 2020

Thomas M. Parker
United States Magistrate Judge

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts
within fourteen (14) days after being served with a copy of this document.  Failure to file
objections within the specified time may waive the right to appeal the District Court's order.  See
*U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).  See also *Thomas v. Arn,* 474 U.S. 140 (1985),
reh'g denied, 474 U.S. 1111 (1986).